HARD ROCK CAFÉ, et al., Petitioners,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Jerome McGinnis, Intervenor.

No. 05–AA–1218.

District of Columbia Court of Appeals.

Argued Nov. 9, 2006.

Decided Nov. 22, 2006.

Curtis B. Hane, Rockville, MD, for petitioners.

Matthew J. Peffer, for intervenor.

Robert J. Spagnoletti, Attorney General for the District of Columbia at the time, Edward E. Schwab, Deputy Attorney General, and William J. Earl, Assistant Attorney General, filed a statement in lieu of brief for respondent.

Before FARRELL and REID, Associate Judges, and SCHWELB, Senior Judge.

FARRELL, Associate Judge:

D.C.Code § 32–1515(f) (2001) provides that "[i]f any [worker's] compensation, payable under the terms of an award, is not paid within 10 days after it becomes due, there shall be added to such unpaid compensation an amount equal to 20% thereof. . . ." The statute further states as relevant here, that an employer late in paying compensation may be relieved of the 20% penalty only if the Mayor (through his agent, the Department of Employment Services (DOES)) elects to "waive payment of the additional compensation after a showing by the employer" that the underlying compensation could not be timely paid "owing to conditions over which [the employer] had no control."

In the case before us, DOES ordered the petitioner-employer to pay the 20% penalty because only a "clerical error on [the employer's] part," *i.e.*, its failure to heed actual or constructive notice of the claimant's current home address, had caused the compensation payment to be made outside the statutory 10–day period. We affirm that decision, observing that while DOES may choose to establish formal procedures by which a compensation recipient must notify the agency (or the employer) of an address change, it has not done so; and the record supports the agency's determination that petitioner was adequately informed of the recipient's address so that, but for its own lack of care,

it would have made payment within the statutory period. For the same reason, we conclude that the Director was not required to waive imposition of the penalty in the circumstances of this case.

## I.

Intervenor Jerome McGinnis ("McGinnis") was entitled to receive worker's compensation pursuant to a settlement agreement between himself and Hard Rock Café, his employer. The agreement, which provided for a lump-sum payment of $63,051.57 (after deduction of attorney's fees and expenses), was approved by a DOES claims examiner on August 16, 2004, and mailed to the parties and the employer's insurance carrier the same day. The Certification of Filing and Service contained a notation that "[t]his award becomes due and payable on the date received by the insurer" and "must be paid within 10 days of said date." The Certification listed McGinnis's address as 7709 Random Run Lane, Apt. 102, Falls Church, Virginia, 22042.

On August 19, 2004, the employer's carrier, Liberty Mutual Insurance Company, mailed a check to McGinnis in the settlement amount but to an address, listed in its records, where he had formerly resided. On September 2, 2004, McGinnis's attorney informed Liberty Mutual by telephone that he had not received the settlement payment. After stopping payment on the first check, the company sent McGinnis a new check on September 14, 2004, at his correct address, which he received.

Through his attorney, McGinnis then requested an order "declaring default" and directing an award of a 20% penalty under D.C.Code § 32–1515(f). A DOES claims examiner rejected the request, concluding that because the agency had "no record of receiving an official change of address from [McGinnis] or from [his] attorney

... nor ... an official copy of [any] notice that [McGinnis] ... mailed to ... the employer/carrier ... indicating that [his] address [had] been changed," the circumstances did not warrant a penalty award under the statute. DOES's Compensation Review Board ("CRB") reversed that decision, however, concluding that the employer and its carrier had received actual or constructive notice of McGinnis's current address, and that the failure to make timely payment of the settlement amount was not owing to circumstances over which the employer lacked control, but rather was "due to clerical error on [its] ... part." The CRB pointed out that as early as February 12, 2004, McGinnis, through counsel, had filed with the Office of Workers' Compensation an Application for Informal Conference regarding compensation,[1] see 7 DCMR § 219 (1986), with copies to the employer and Liberty Mutual, listing McGinnis's current address at Random Run Lane. The CRB further noted that the Memorandum of Informal Conference issued by the claims examiner on April 12, 2004, summarizing the results of the meeting and recommending compensation, listed McGinnis's current address on the certificate of service to the parties and Liberty Mutual. Finally, the CRB pointed out that "the draft certificate of service attached to the draft of the settlement signed by the counsel for the parties and [McGinnis], which was approved by the [claims examiner], listed [McGinnis's] address as '7709 Random Run Lane, Apt. 102, Falls Church, Virginia 22042.' "[2]

For these reasons, the CRB ruled that the employer was liable for the 20% penalty called for by the statute. Petitioner seeks reversal of that decision.

## II.

██ Our review here has two aspects: first, interpretation of the governing statute, and second, examination (necessarily deferential) of DOES's application of that statute to the record before it. As to the first:

> The intent of the legislature is to be found in the language used. The burden on a litigant who seeks to disregard the plain meaning of the statute is a heavy one, and this court will look beyond the ordinary meaning of the words ... only where there are persuasive reasons for doing so.

*National Geographic Soc'y v. District of Columbia Dep't of Employment Servs.*, 721 A.2d 618, 620 (D.C.1998) (citation, internal quotation marks, and brackets omitted). As to the second: We "must affirm an agency decision unless it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *White v. District of Columbia Dep't of Employment Servs.*, 793 A.2d 1255, 1259 (D.C.2002).

In this case, petitioner has given us no reason not to "apply [§ 32–1515(f)] as it is written and in accordance with its plain meaning." *National Geographic Soc'y*, 721 A.2d at 622. By its terms, the statute is compulsory, stating that "there shall be added" the specified penalty for late payment unless the Mayor has waived it for the reason the statute defines.[3] A court

---

1. The CRB mistakenly cited the date of this document as February 17, 2004.

2. Although the CRB cited and relied on only these three documents, in actuality the record contains no fewer than *eleven* documents—including Applications for Informal Conference, Applications for Formal Hearing, Notices of Informal Conference, and Memorandums of Informal Conference—dating back to February 2002 *and all* listing McGinnis's address on Random Run Lane.

3. Although not relevant here, the 20% penalty also will not be imposed if "review of the [underlying] compensation order ... is had as provided in § 32–1522 and an order staying payments has been issued by the Mayor or court."

construing Virginia's parallel statute has recognized that its purpose is "to compel prompt payment" and to "discourage slow and circuitous payment of benefits due" or "inaction or inattention to a claim." *Weston v. B.J. Church Constr. Co.*, 9 Va.App. 283, 387 S.E.2d 96, 98 (1989) (citation omitted). DOES likewise has stressed that the statute was meant to require "prompt" payment of compensation, stating in a 1989 decision that unless waiver has been granted, "either the compensation is timely paid and there is no penalty, or the compensation is late and the penalty must be imposed if claimant seeks it." *Dorsey v. ITT/Continental Baking*, Dir. Dkt. No. 86–19, 1989 DC Wrk. Comp. Lexis 161 (May 9, 1989), at 2–3.[4] In *Orius Telecomms., Inc. v. District of Columbia Dep't of Employment Servs.*, 857 A.2d 1061, 1066 (D.C. 2004), we partially quoted the language from *Dorsey, supra,* and went on to apply § 32–1515(f) strictly to the issue presented there, holding that the claimant must *receive payment* within ten days of the compensation order for the penalty provision not to apply.

The legislature, of course, could have written a statute different from § 32–1515(f)—one, for example, that imposed a penalty for late payment only if the delay was "unreasonable," *see* CAL. LABOR CODE § 5814; *State Comp. Inc. Fund v. Workers' Comp. Appeals Bd.*, 18 Cal.4th 1209, 77 Cal.Rptr.2d 528, 959 P.2d 1204 (1998), or that gave the agency discretion as to the proper penalty amount. *See, e.g., Williams v. State Accident Ins. Fund*, 31 Or.App. 1301, 572 P.2d 658 (1977) (upholding agency award of 15% penalty under statute allowing penalty of "up to 25 percent" for late payment of benefits). But § 32–1515(f)'s language is unequivocal, and because strict application of the statute comports with its evident purpose to make the employer (and its carrier) responsible for timely payment in all circumstances within its control, we must apply it accordingly.

■ In rejecting McGinnis's request for the penalty, the claims examiner reasoned that filing of "an official change of address [form or notification]" by an employee who has moved is a condition of requiring payment of compensation within the statutory ten days. As the CRB implicitly recognized, however, no statute or regulation in the District of Columbia prescribes the manner by which a claimant must notify DOES or the employer of a change of address. Indeed, when the legislature has required notification by a compensation claimant in a specific manner or form, it has done so expressly. *See* D.C.Code § 32–1513(b) (requiring that notice of an injury or death for which compensation is payable "be in writing [to the Mayor or employer]" and "shall contain [*inter alia*] the name and address of the employee.")[5] The proper question, therefore, is whether the employer or its carrier had actual or constructive notice of the address change

---

4. *See also,* for example, *Malone v. Bob Bernhardt Paving*, 1 A.D.3d 781, 766 N.Y.S.2d 470 (2003), where the court, in construing a penalty provision similar to the District's, stated:

> The penalty provisions of Workers' Compensation Law § 25(3)(f) are self-executing and the penalty is mandatory and automatic if the award is not timely paid. Public policy considerations necessitate such a liberal construction since the uniform assessment of penalties in *all* cases of late payment will ultimately benefit employees by

deterring carriers from delaying award payments.

*Id.* at 471–72 (citations and internal quotation marks omitted; emphasis in original).

5. Even then, however, failure to give such notice does not bar a claim if, for example, the employer or carrier had knowledge of the injury and its relation to the employment. Section 32–1513(d)(1). *See Jiminez v. District of Columbia Dep't of Employment Servs.*, 701 A.2d 837, 839–40 (D.C.1997).

sufficient to place on them the duty to ensure that McGinnis received the compensation within ten days of the due date. The CRB found that the employer and insurer had been given such notice, and its finding is supported by substantial evidence in the record. *See Orius,* 857 A.2d at 1065 (court defers to factual determinations by DOES that "are supported by substantial evidence in the record"). As the CRB found, no fewer than three documents in possession of the employer's counsel and the carrier, dating back to the Application for Informal Conference filed in February 2004 and including the August 16, 2004 Compensation Order approving the settlement agreement, contained McGinnis's current address on Random Run Lane. In fact, nearly a dozen documents filed with or issued by DOES relating to McGinnis's claim, and dating back to February 2002, listed that same address. See note 2, *supra.* Certainly there is nothing arbitrary or capricious, *White, supra,* in the CRB's conclusion that the employer had received actual or constructive notice of McGinnis's current address.

The employer, while not disputing that it or its attorney had received the documents cited by the CRB,[6] argues that none of them existed or had been prepared "for the purpose of advising parties of a change of address." But this argument assumes the requirement of a specific form of notice of address change which the District does not impose on worker's compensation claimants. Moreover, the Compensation Order of August 16, on the same page listing the parties' addresses, carried the express warning that the settlement award "must be paid within 10 days of [receipt of the order by the insurer] or penalty in the amount equal to 20 percent thereof shall be added to the unpaid amount." A formal order bearing this warning, together with McGinnis's address, was reasonably calculated to notify the employer of the address to which timely payment had to be made. Although it might be the better course for DOES to require persons with pending compensation claims to notify the agency or the employer of an address change in a particular manner,[7] it has not done so, and the CRB properly determined that actual or constructive notice of the employee's address suffices to trigger the employer's obligation to ensure timely receipt of payment under the statute.[8]

■ For the same reason, the CRB did not abuse its discretion in declining to waive the employer's failure to make timely payment as something "over which [it] had no control." Section 32–1515(f). The notification furnished by the cited documents made it a condition *within* the employer's control—or so the CRB could reasonably conclude—that it sent the set-

---

6. *See, e.g., Greenwood's Transfer & Storage Co. v. District of Columbia Dep't of Employment Servs.,* 553 A.2d 1246, 1247 (D.C.1989) (notice given counsel of a party is considered notice to the party).

7. The employer points to two jurisdictions, Maryland and West Virginia, which provide a specific form for notification to the agency and employer of an address change in worker's compensation cases, but even then, it does not discuss how the failure to use that form is treated when the agency or employer is otherwise shown to have received notification of the change.

8. It is true that the CRB singled out McGinnis's Application for Informal Conference filed in February 2004 as "constitut[ing] *official* notice" to the agency, the employer, and the insurer (emphasis added), but it went on immediately to point out the two additional documents they had all received stating McGinnis's correct address. The CRB's opinion, therefore, is most naturally read as concluding that actual or constructive notice to the employer is sufficient even without a prescribed, "official" form of notification of address change.

tlement check to a stale address rather than to the correct one. We do not dispute that the employer (and Liberty Mutual) acted in complete good faith in reissuing the check as soon as they learned of its non-receipt and stopped payment on the first one; and McGinnis claims no financial harm from the delayed payment even remotely commensurate with the 20% penalty imposed. But the statute as drafted makes such considerations beside the point, by penalizing—in a readily administrable percentage amount—employers who through their own fault or inattention fail to pay compensation in the timely manner required.[9]

*Affirmed.*

9. Of course, compensation is more normally paid by "installment[s]," *see* § 32–1515(f) (penalty waivable where employer shows that "such installment" could not be paid through circumstances beyond its control), and the substantial size of the penalty in this case results from the parties' settlement in the form of a lump-sum payment of compensa-

tion. But with that very exposure in mind, perhaps, the order approving the settlement contained the warning mentioned in the text above. It is certainly not unreasonable to expect an employer's (or its carrier's) due diligence to reflect the magnitude of the penalty that insufficient care will invite.