**Richmond**

AUDOBON TREE SERVICE, et al.

v.

ERIC L. CHILDRESS

No. 0832-85

Decided March 4, 1986

COUNSEL

Benjamin J. Trichilo (Lewis & Trichilo, on brief), for appellant.

Julia H. Butler (Ashcraft & Gerel, on brief), for appellee.

OPINION

KEENAN, J.—Audobon Tree Service appeals from an Industrial Commission decision assessing a twenty percent late payment penalty, pursuant to Code § 65.1-75.1, for alleged late payment of benefits to Eric L. Childress.[1] The award of benefits was based on a supplemental memorandum of agreement submitted by the parties. The issue presented on appeal is whether the penalty should have been assessed. While we agree with the Commission's decision that the penalty should have been assessed, we reach this conclusion for different reasons.

On August 29, 1983, Childress sustained frostbite in his lower left leg as a result of and in the course of his employment. He received an award of temporary total disability benefits through January 1, 1984. On February 27, 1984, Childress filed an appli-

---

[1] Code § 65.1-75.1 provides: "If any payment is not paid within two weeks after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty percent thereof."

cation for a change in condition, alleging continuing disability. On March 22, 1984, a deputy commissioner awarded Childress compensation for temporary total disability beginning January 2, 1984, and continuing until modified.

Childress returned to work on March 19, 1984, and compensation was paid through part of April, 1984. On July 12, 1984, he filed an application for a hearing, alleging a thirty percent permanent partial impairment to his lower left leg. Apparently, no action was taken on this application. He filed an application for a change in condition on October 4, 1984, alleging the same disability rating.

On January 23, 1985, a deputy commissioner entered an award providing Childress with benefits for fifty-two and one half weeks, commencing April 10, 1984. This award was based on the parties' stipulation that Childress had sustained a thirty percent permanent disability as a result of and in the course of his employment.

Childress' first compensation payment under this award was received by his attorney on February 8, 1985. The letter accompanying the check was dated February 6, 1985. Childress received the check by mail from his attorney on February 11, 1985. In a letter to the Commission dated February 11, 1985, Childress' attorney alleged that Childress had not been paid within two weeks of the date of the award. She therefore requested that Audobon be assessed a twenty percent penalty pursuant to Code § 65.1-75.1. No evidence or argument was heard on the matter. In a letter dated February 28, 1985, the Chief Deputy Commissioner assessed Audobon with a twenty percent penalty.

At Audobon's request, the full Commission reviewed this decision. At the time of its review, the Commission had been presented with two affidavits for consideration. One affidavit was filed by Augustina Ammah, the Claims Representative for Audobon's insurance company. Ammah stated that her company did not receive notice of the January 23, 1985, award of the Commission until January 28, 1985. She further stated that she mailed Childress' check to his attorney on February 6, 1985.

The second affidavit before the Commission was filed by Debra Erwin, secretary to Childress' counsel. Erwin stated that on February 8, 1985, her office received Childress' check. She sent the

check to Childress by certified mail, with a return receipt requested. She stated that her receipt indicated that Childress had received the check on February 11, 1985.

On May 24, 1985, the Commission affirmed the Chief Deputy Commissioner's assessment of the penalty. The Commission restated its position that for the purposes of Code § 65.1-75.1, compensation is "due" on the date of the award. The Commission further held that payment is "paid" under Code § 65.1-75.1 only after it has been received by the claimant.

We first address the issue of when payment becomes "due" within the meaning of Code § 65.1-75.1. Audobon argues that the Commission's determination of this issue was arbitrary and capricious, and deprived it of due process and equal protection of law. Audobon claims denial of equal protection based on the fact that because of geographic location, some employers and insurers receive notice of an award by mail sooner than others, and thereby have more time to issue payment.

We find no merit in Audobon's assertion that this constitutes a denial of equal protection. The Commission's interpretation of when payment becomes due under Code § 65.1-75.1 is reasonably related to a proper purpose and is not arbitrary or discriminatory. Meeting this test, it does not violate the constitutional rights of equal protection and due process. *Duke* v. *Pulaski County*, 219 Va. 428, 438, 247 S.E.2d 824, 829 (1978). The legitimate purpose served by this interpretation of Code § 65.1-75.1 is the provision of a uniform time for payment. It also establishes a fixed payment date known to all parties, and ensures prompt payment to workers whose right to benefits have already been established. Therefore, while it may be that some employers and insurers receive their mail sooner than others, there is no showing of lack of adequate notice nor is there any showing of how some employers are significantly disadvantaged by the rule. This interpretation of the statute, therefore, does not constitute invidious discrimination.

Audobon also argues that payment could not become due before the twenty day period for appeal to the full Commission had expired.[2] A claimant's right to receive payment, however, is fixed as

---

[2]   Code § 65.1-97.

of the date of award, just as one's rights are fixed under a judgment order of a court. Further, Code § 65.1-98.1, which provides for interest on appealed awards, states: "All awards entered by the Commission shall take effect as of the date thereof." In this case, Audobon did not request the full Commission to review the January 23, 1985, award. For this reason, it may not argue that the twenty day appeal period affected the date payment was due under § 65.1-75.1. Therefore, based on these facts, we find that payment became "due" as of the date of the award.

Audobon next argues that Code § 1-13.3[3] applies to payments made pursuant to the Workers' Compensation Act. It asserts that the time for computing the two week period under Code § 65.1-75.1 began on the day following the award. The Commission's practice, however, is to begin computing the two week payment period as of the date of the award. We believe that the Commission's method of computation is incorrect.

The language of Code § 1-13.3 clearly provides that in computing the time allowed for the doing of an act, "that time shall be allowed in addition to the day on which the event or judgment occurred." By its own terms, § 1-13.3 applies to all statutes which provide for a notice or any other act to be done within a given time. The statute makes no exception for times computed pursuant to the Workers' Compensation Act. We hold that Code § 1-13.3 is applicable to payments made pursuant to the Workers' Compensation Act and that the day following the award is the first day to be counted in computing the time allowed for making payments pursuant to an award.

Audobon further argues that it was denied due process of law because the Commission assessed a penalty without providing for an evidentiary hearing. We do not reach the substance of this argument because Audobon never requested, and therefore was never denied, an evidentiary hearing. Rule 5A:18.

We turn now to Audobon's argument that a payment is "paid" under Code § 65.1-75.1 if it is mailed to the claimant within two weeks after it becomes due. This argument is in direct contraven-

---

[3] Code § 1-13.3 provides that: "[W]hen a statute requires a notice to be given or any other act to be done within a certain time after any event or judgment, that time shall be allowed in addition to the day on which the event or judgment occurred."

tion of Commission precedent, and to date has not been addressed in either this court or the Supreme Court.

■ In *Hodge* v. *Great Coastal Express*, ___ O.I.C. ___ (December 20, 1984), the Commission, in determining a payment due date, indicated that compensation is "paid" when actually received by the claimant. Although the actual holding of *Hodge* concerned the question of when compensation is "due" under Code § 65.1-75.1, the result reached by the Commission incorporated a finding that actual receipt by the claimant is the event which fixes the time when compensation is "paid" under that section. In the case before us, the Commission stated: "[W]e further hold that payment is 'paid' only upon receipt of such payment by the claimant."

The language of Code § 65.1-75.1 requires that payment be *paid* within two weeks after it becomes due. Nothing in the language of the statute suggests that "paid" means "received by the claimant." Further, if we were to find that "paid" means received by the claimant, payments would have to be mailed with a return receipt requested in order for the employer to prove when the claimant actually received payment. In many cases, claimants would not be present to sign the return receipt the first time delivery is attempted. This would create further delays in receiving benefit payments, thereby frustrating the purpose of Code § 65.1-75.1.

Also, if a claimant was not physically present the first time delivery of his check was attempted, he could create a penalty situation where one should not fairly exist. If he received a notification of certified mail being held for him at the post office within the two week period set out in Code § 65.1-75.1, but chose to delay obtaining the mail until after the two week period had expired, the employer would be required to pay a penalty pursuant to Code § 65.1-75.1, although it had done nothing to contribute to the delay.

We do not believe that the legislature intended these results. Further, if the legislature had intended that actual receipt by the claimant was the test for when a benefit was "paid," it could have easily so stated in Code § 65.1-75.1. Based on the foregoing, we find the Commission erred in holding that a benefit is "paid" when actually received by the claimant.

██ Audobon asks us to hold that mailing payment to the claimant within two weeks after a benefit becomes due is sufficient to satisfy the requirements of Code § 65.1-75.1. Where a statute imposes a penalty, it must be strictly construed in favor of the party on whom the penalty is sought to be imposed. *Dennis* v. *Robertson*, 123 Va. 456, 470, 96 S.E. 802, 806 (1918); *Eaton* v. *Sealol, Inc.*, 447 A.2d 1147, 1148 (R.I. 1982). We hold that under Code § 65.1-75.1 a benefit is "paid" when payment is mailed *directly* to the claimant, at his current residential address,[4] within two weeks after it becomes due.

██ Although the Commission erred in its determination of when a benefit is "paid" under Code § 65.1-75.1, application of the proper standard to the facts before us still mandates imposition of the penalty against Audobon. Childress' check was not mailed directly to him. Instead, the insurer mailed it to his counsel. This was done in violation of Rule 12 of the Commission which states: "All compensation due an injured employee . . . under the Virginia Workers' Compensation Act must be paid direct to the beneficiary or beneficiaries. This ruling applies in cases in which the employee is represented by counsel, as well as in cases in which he has no representation."

The Commission's award was dated January 23, 1985. Pursuant to Code § 1-13.3, January 24, 1985, was the first day of the two week period by which Audobon was required to make payment pursuant to Code § 65.1-75.1. The fourteenth day of the two week period, therefore, was February 6, 1985. Because Audobon did not mail Childress' check directly to him by February 6, 1985, the last date allowed under Code § 65.1-75.1, and Childress did not actually receive his check within this time period, Audobon violated the provisions of Code § 65.1-75.1. For this reason, we find that the Commission was correct in imposing the late payment penalty on Audobon and accordingly, the decision is affirmed.

*Affirmed.*

Koontz, C.J., and Benton, J., concurred.

---

[4] See Code § 65.1-100.2.